**James M. BAHM, II, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 10A01–0208–PC–317.**

Court of Appeals of Indiana.

May 29, 2003.

James M. Bahm, II, Tell City, IN, Appellant pro se.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

James M. Bahm, II, appeals the denial of his petition for post-conviction relief. On appeal, Bahm raises four issues, which we restate as:

1. Whether the post-conviction court erred in denying Bahm's motion for change of judge;

2. Whether the post-conviction court erred by denying Bahm's motion for production of documents and interrogatories;

3. Whether the post-conviction court's denial of Bahm's petition was contrary to law; and

4. Whether Bahm received ineffective assistance from his post-conviction counsel.

We affirm in part and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

On direct appeal, we summarized the underlying facts as follows:

On May 17, 1997, Bahm struck Caleb Hawes, a two and a half year old infant left in his care, multiple times with his hand and a television remote and threw him across the room, causing the child to vomit and appear lifeless and non-responsive. Bahm took the child to the emergency room. There, he spoke with police and confessed to striking the child.

*Bahm v. State*, No. 10A01–9904–CR–126, memorandum op. at 2, 727 N.E.2d 1131 (Ind.Ct.App., May 4, 2000).

Bahm was charged with aggravated battery, a Class B felony,[1] neglect of a dependent, a Class B felony,[2] and criminal recklessness, a Class D felony.[3] The jury found Bahm guilty on all charges. The trial court imposed a twenty-year sentence. Bahm appealed, and we affirmed.

Bahm filed a pro se petition for post-conviction relief, in which he alleged his convictions violated double jeopardy principles, insufficient evidence supported his convictions, the jury instructions were fundamentally erroneous, and his trial and appellate counsel were ineffective. In addition, he filed a motion for change of judge and motion for production of documents and interrogatories. The post-conviction court denied Bahm's motion for change of judge and denied Bahm's interrogatories and motion for production of documents. Counsel entered an appearance on behalf of Bahm. A hearing was held on Bahm's petition; however, Bahm's counsel presented no witnesses and submitted no other evidence. The court denied Bahm's petition in an order that contained findings of fact and conclusions of law. Bahm appeals.

---

1. Ind.Code § 35–42–2–1.5.

2. Ind.Code § 35–46–1–4(a)(1).

3. Ind.Code § 35–42–2–2(c)(1).

## DISCUSSION AND DECISION

### 1. *Change of Judge*

Bahm first argues that the post-conviction court erred by denying his motion for change of judge. Post–Conviction Rule 1(4)(b) provides:

Within ten [10] days of filing a petition for post-conviction relief under this rule, the petitioner may request a change of judge by filing an affidavit that the judge has a personal bias or prejudice against the petitioner. The petitioner's affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. A change of judge shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

█ When a petitioner requests a change of judge, such change is neither "automatic" nor "discretionary."[4] *Lambert v. State*, 743 N.E.2d 719, 728 (Ind. 2001), *reh'g denied, cert. denied*, 534 U.S. 1136, 122 S.Ct. 1082, 151 L.Ed.2d 982 (2002). Rather, it requires a legal determination by the post-conviction court. *Id.*

We review the court's determination "under a clearly erroneous standard." *Azania v. State*, 778 N.E.2d 1253, 1261 (Ind. 2002). A decision was clearly erroneous if our review "leaves us with a definite and firm conviction that a mistake has been made." *Sturgeon v. State*, 719 N.E.2d 1173, 1182 (Ind.1999).

█ We presume a judge is not prejudiced against a party. *Lambert*, 743 N.E.2d at 728. To require a change of judge, a judge's bias must be personal. *Id.* Personal bias "stems from an extrajudicial source meaning a source separate from the evidence and argument presented at the proceedings." *Id.* Adverse rulings on judicial matters do not indicate a personal bias that calls the trial court's impartiality into question. *Harrison v. State*, 707 N.E.2d 767, 790 (Ind.1999), *reh'g denied, cert. denied*, 529 U.S. 1088, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000). Moreover, a judge's emotional statements at a prior sentencing hearing regarding a defendant's character and the circumstances of the crime committed do not demonstrate a personal bias or prejudice. *Lambert*, 743 N.E.2d at 729.

█ Bahm's affidavit alleged the following reasons why the post-conviction judge

---

4. Bahm argues that a "Petitioner need not establish actual bias or prejudice, but merely has to show that he believes the Judge is biased or prejudiced against him" and "if the Petitioner fully complies with the requirements, [the court] must grant [the] motion: granting [a] properly filed motion is not discretionary." (Appellant's Br. at 6.) To support this argument he cites *Zavesky v. State*, 570 N.E.2d 1336 (Ind.Ct.App.1991), *trans. denied*, and *Tucker v. State*, 581 N.E.2d 455 (Ind.Ct.App.1991). In both *Zavesky* and *Tucker*, we stated that a post-conviction court must grant a motion for change of judge when the petitioner has fully complied with P–CR 1 § 4(b). *Tucker*, 581 N.E.2d at 456; *Zavesky*, 570 N.E.2d at 1337. However, subsequent to those cases, our supreme court modified the standard under which a post-conviction court should review a motion for change of judge. *See Jackson v. State*, 643 N.E.2d 905, 907 (Ind.Ct.App.1994) (citing *State ex rel. Whitehead v. Madison County Circuit Court*, 626 N.E.2d 802, 803 (Ind.1993)), *trans. denied*. According to our supreme court, the new rule is that the change is neither automatic nor discretionary. *Whitehead*, 626 N.E.2d at 803. Rather, "the rule requires the judge to examine the affidavit, treat the historical facts recited in the affidavit as true, and determine whether these facts support a rational inference of bias or prejudice." *Id.* Consequently, contrary to Bahm's argument, the court was not required to automatically grant his properly filed motion.

was biased: (1) "allowing me to be convicted on more than one count for the same offense and facts; and by hearing my case which included evidence which should have been inadmissible"; (Appellant's App. at 15.) (2) "giving Jury Instructions that violated my due process rights and denied me the opportunity to a fair trial by allowing me to be sentenced more severely [sic] than the offense called for, convicted on proof less than prescribed by law"; (*Id.*) (3) making "statements ... at my sentencing that were inflammatory, grossly prejudicial and biased in nature"; (*Id.*) (4) "refus[ing] to rule on my Motion for Reconstruction of the Record (accompanied with affidavit) ... which included transcripts for the suppression hearing and the opening and closing statements from trial"; (*Id.*) and (5) "having an improper sentencing hearing." (*Id.* at 16.)

As we stated above, adverse rulings on judicial matters do not indicate personal bias or prejudice, nor typically do statements at sentencing hearings. As Bahm did not explain in his affidavit what the alleged "inflammatory, grossly prejudicial" statements were or how his sentencing hearing was "improper," we maintain our presumption that the judge was not personally biased against Bahm. The post-conviction court did not err when it refused to grant Bahm's motion for change of judge.

### 2. *Interrogatories and Production of Documents*

■ Second, Bahm alleges the trial court erred in denying his motion asking the State to answer interrogatories and produce documents. A trial court has broad discretion to control discovery.[5] *Roche v. State,* 690 N.E.2d 1115, 1133 (Ind.

1997), *reh'g denied.* Accordingly, we will not reverse the trial court for a discovery decision absent an abuse of discretion. *Id.* An abuse of discretion has occurred if the trial court's decision was against the logic and effect of the facts and circumstances before the court. *Hall v. State,* 760 N.E.2d 688, 689–90 (Ind.Ct.App.2002), *trans. denied.*

■ Bahm's interrogatories and motion for production of documents provided:

Comes now the Petitioner, James M. Bahm II, pro-se and pursuant to Trial Rules 33 and 34, does request that the State produce the following documents and answer the attached interrogatories for the purpose of helping the Petitioner in his Post–Conviction Relief. You are directed to answer each of the interrogatories in writing under oath, and produce each of the requested documents for inspection and copying, within 30 days of service.

1. State the names of all staff that attended to Caleb Hawes at Clark Memorial Hospital on 5–15–97. If they have any notes, charts, opinions, etc ... or any other documents regarding treatment, produce those documents as well as the capacity they were serving on 5–15–97.

2. Did Det. Gross have any conversations with any above listed staff member on or after 5–15–97? If so what was discussed and if there are any notes of those conversations produce those documents.

3. State the names of all staff that attended to Caleb Hawes from 5–15–97 thru 5–22–97 at Kosair Children's Hospital. If they have any notes, charts, opinions, etc ..., or any other

---

**5.** Our supreme court has presumed without deciding that the Indiana Trial Rules govern discovery in post-conviction proceedings.

*Roche v. State,* 690 N.E.2d 1115, 1133 (Ind. 1997), *reh'g denied.* Consequently, we do the same.

documents regarding treatment, produce those documents as well as the capacity they were serving on 5–15–97 thru 5–22–97.

4. Did Det. Gross have any conversations with any above listed staff member on or after 5–15–97 thru 5–22–97? If so, what was discussed and if there are any notes of those conversations, produce those documents.

5. How many photographs were taken of Caleb Hawes from 5–15–97 (at both Clark Memorial Hospital and Kosair Children's Hospital) thru 5–22–97 (at Kosair Children's Hospital), included herein are x-rays, CAT Scans, regular photographs? What were the photographs taken? (their description). What instruments were they taken with? How many total photographs were taken?

6. What are the names of Radiologists and technicians that took all x-ray and CAT Scans? Did they record any findings, conclusions or opinions on their interpretations of those photographs, if so produce those documents.

7. Did Det. Gross have any conversations with any above listed staff members on or after 5–15–97 thru 5–22–97? If so, what was discussed and if there are any notes of those conversations, produce those documents.

8. Did Chris Yarbrough have any conversations with any above listed staff member in questions 1–6 on or after 5–15–97 thru 5–22–97? If so, what was discussed and if there are any notes from those conversations, produce those documents.

9. Were the photographs, x-rays or CAT Scans ordered to be taken, if so who ordered them? If those orders are written, produce those documents.

10. Were statements made to you by any person listed in questions 1–9 from 5–15–97 thru 7–31–00 concerning the treatment or care of Caleb Hawes? If so, please list their names and provide what was discussed; also, if any notes were taken or if the conversations were recorded produce a copy of those documents.

11. The Petitioner requests that the following documents be copied, at the State's expense within 30 days of service:

(a) All photographs—x-rays, CAT Scans and regular photographs taken of Caleb Hawes on, between or after 5–15–97 thru 5–22–97.

(b) All doctor's notes, evaluations, examinations and results, progress notes, dietary servings and medications administered to Caleb Hawes from 5–15–97 thru 5–22–97 and following.

(c) A copy of the transcripts from the suppression hearing held on 12–29–98 in Clark Superior Court Number 1. And a copy of Opening and Closing statements made at trial on 1–5–99 and 1–7–99.

(Appellant's App. at 23–25.)

On appeal, Bahm claims the trial court abused its discretion by refusing his motion for discovery because "Bahm believes the State holds information and evidence he is entitled to that is not sufficient to sustain his conviction . . . and cites *BRADY v. MARYLAND [373 U.S. 83] 83 S.Ct. 1194; 10 L.Ed.2d 215 (1963)* to support his argument." (Appellant's Br. at 8.)

In *Roche*, a post-conviction petitioner requested the prosecutor's entire files because, if he had the entire file, "he might have found a *Brady* violation that he could have litigated in his post-conviction proceeding." *Roche*, 690 N.E.2d at 1133. Our supreme court held "no rule of consti-

tutional law or state procedure mandates unfettered access to the prosecution's files in the hopes that a violation of the prosecutor's duty under *Brady* will be uncovered." *Id.* Moreover, the court held: "[W]e agree that in most circumstances, the post-conviction petitioner will be fully informed of the documentary source of the petitioner's claims and that it is an abuse of the post-conviction process to use it to investigate possible claims rather than vindicate actual claims." *Id.*

Here, while Bahm is not seeking access to the State's "entire" file, he is seeking an extraordinary number of documents and amount of information from the State. Bahm has not requested some piece of exculpatory evidence that the State withheld from him in violation of *Brady.* Rather, he seeks all the information the State had about the victim's injuries and treatment, such that he may determine if some exculpatory piece of evidence was withheld from him. This is an improper use of the post-conviction process. *See id.* Consequently, the post-conviction court did not abuse its discretion when it denied Bahm's discovery motion. *See id.*

### 3. *Denial of Petition*

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State,* 761 N.E.2d 389, 391 (Ind.2002), *reh'g denied.* Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State,* 763 N.E.2d 441, 443 (Ind.2002), *reh'g denied, cert. denied,* — U.S. ——, 123 S.Ct. 857, 154 L.Ed.2d 803 (2003); *see also* Ind. Post–Conviction Rule 1(1)(a). Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. P–C.R. 1(5).

When a petitioner appeals the denial of post-conviction relief, he appeals from a negative judgment. *Curry v. State,* 674 N.E.2d 160, 161 (Ind.1996). Consequently, we may not reverse the post-conviction court's judgment unless the petitioner demonstrates that the evidence "as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Id.* We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not have to give deference to the post-conviction court's conclusions of law. *Davidson,* 763 N.E.2d at 443–44. On appeal, we may not reweigh the evidence or reassess the credibility of the witnesses. *Id.* at 444.

In his petition, Bahm alleged the following grounds for post-conviction relief: (A) trial and appellate counsel provided ineffective assistance; (B) his "convictions and/or sentences ... violate the Double Jeopardy Clause of the Indiana and/or U.S. Constitutions," (Appellant's App. at 31); (C) insufficient evidence existed to support his convictions; and (D) the final jury instructions were fundamentally erroneous, denying Bahm "due process and/or a fair trial," (*id.* at 38). We review the court's denial of Bahm's petition under each of these grounds individually.

#### (A) *Ineffective Assistance of Counsel*

We review ineffective assistance of trial and appellate counsel claims under the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Wentz v. State,* 766 N.E.2d 351, 360 (Ind.2002), *reh'g denied.* First, the petitioner must demonstrate that counsel's performance was deficient because it fell below an objective standard of reasonableness and denied the petitioner the right to counsel guaranteed by the

Sixth Amendment to the United States Constitution. *Smith v. State*, 765 N.E.2d 578, 585 (Ind.2002), *reh'g denied.* Second, the petitioner must demonstrate that he was prejudiced by his counsel's deficient performance. *Wentz*, 766 N.E.2d at 360. To demonstrate prejudice, a petitioner must demonstrate a reasonable probability that the result of his trial or appeal would have been different if his counsel had not made the errors. *Id.* A probability is reasonable if our confidence in the outcome has been undermined. *Id.*

We presume that counsel provided adequate assistance, and we give deference to counsel's choice of strategy and tactics. *Smith*, 765 N.E.2d at 585. "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id.* If we may easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient. *Wentz*, 766 N.E.2d at 360.

■ Here, the post-conviction court first concluded that Bahm had waived his allegation of ineffective assistance of trial counsel by failing to raise that issue on direct appeal. However, our supreme court has held that "a Sixth Amendment claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in postconviction proceedings." *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind.1998), *reh'g denied, cert. denied*, 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999). Consequently, the post-conviction court's conclusion that Bahm had waived this allegation of error is contrary to law.

■ Next, the post-conviction court concluded that trial and appellate counsel were not ineffective because Bahm's failure to procure the testimony of his trial and appellate counsel leads to the conclusion that they would not have supported

his allegations of error and because Bahm failed to prove he was prejudiced given "Petitioner made extensive pre-trial admissions" and "The evidence of guilt could only be described as overwhelming." (Appellant's App. at 53.)

In its appellee's brief, the State argues that Bahm "failed to establish any of his claims of ineffective assistance of either trial counsel or appellate counsel" because "no evidence was presented at the post-conviction hearing to support any of [Bahm's] allegations of error." (Appellee's Br. at 11.) Specifically, the State notes that the Trial Record prepared for Bahm's direct appeal was not admitted into evidence at the post-conviction proceedings. Our review of the post-conviction hearing supports the State's allegation. No evidence was submitted at Bahm's post-conviction hearing; rather, the parties argued only issues of law and discussed an abstract of judgment the trial court had in its own file.

■ A post-conviction court may not take judicial notice of the transcript of the evidence from the original proceedings unless exceptional circumstances exist. *State v. Hicks*, 525 N.E.2d 316, 317 (Ind. 1988). The transcript must be admitted into evidence just like any other exhibit. *Id.* Consequently, the post-conviction court erred when it took judicial notice of the trial and direct appeal proceedings and rendered a decision on the merits of Bahm's claims of ineffective assistance of trial and appellate counsel. *See, e.g., Moser v. State*, 562 N.E.2d 1318, 1321 (Ind.Ct. App.1990) ("The facts of the present case do not present an exceptional situation such that the court could permissibly take judicial notice of Moser's 1979 arraignment.").

Nevertheless, as the State notes, because Bahm did not produce any witnesses

at the post-conviction hearing, and because Bahm did not submit his direct appeal record of proceedings, Bahm failed to produce any evidence to support his allegations of ineffective assistance from trial and appellate counsel. Consequently, we cannot say that the post-conviction court's denial of Bahm's petition was contrary to law. *See Tapia v. State,* 753 N.E.2d 581, 587–88 (Ind.2001) (holding petitioner's failure to present any witnesses or submit the trial record into evidence at hearing led to conclusion that petitioner did not meet his burden of proof for post-conviction relief).

### (B) *Double Jeopardy*

██ Bahm was charged with aggravated battery, a Class B felony, neglect of a dependent, a Class B felony, and criminal recklessness, a Class D felony. According to Bahm, he was "convicted" of all three of those in violation of state and federal principles of double jeopardy. The post-conviction court found that Bahm's allegation of error failed because "he was only sentenced on Aggravated Battery ... [t]he other two counts were merged in the judgment." (Appellant's App. at 52.) On appeal, Bahm claims that merging those charges is insufficient, that the trial court had to "vacate" the convictions pursuant to *Clark v. State,* 752 N.E.2d 209 (Ind.Ct. App.2001), *trans. denied.*

In *Carter v. State,* our supreme court considered an appellant's argument that his guilty verdicts for multiple charges of drunk driving violated double jeopardy principles. 750 N.E.2d 778 (Ind.2001). Carter was charged with operating a vehicle with a blood alcohol level greater than .10%, operating a vehicle while intoxicated, and operating a vehicle while intoxicated with another conviction of operating while intoxicated within the past five years. *Id.* at 778–79. The jury found Carter guilty of the first two charges. The court found Carter guilty of the third charge. The court then "entered a judgment of conviction and sentence for Count III." *Id.* at 779. Carter alleged on appeal that his other two "convictions" had to be vacated. The supreme court discussed the difference between a jury's guilty verdict and a court's judgment of conviction, and then held: "There is no particular reason to order a trial court to vacate the jury 'conviction' on, say, counts one or two where the trial court entered a judgment only on count three." *Id.* at 781.

██ The post-conviction court determined that Bahm was not subjected to double jeopardy because "he was only sentenced on Aggravated Battery ... [t]he other two counts were merged in the judgment." (Appellant's App. at 52.) However, the transcript of the post-conviction hearing indicates that, to decide this issue on the merits, the court took judicial notice of its trial records.[6] This was inappropriate. *See Moser,* 562 N.E.2d at 1321.

---

6. At the hearing, the post-conviction court said:

> The more I am able to review the matters in the file there's more uh some things are coming into focus.... I would like to address the Double Jeopardy argument. Now I don't know if your client understands Double Jeopardy as a legal concept applied to this particular case but I'm looking at the Abstract of Judgment and [if] you've not seen the Abstract of Judgment you're welcome to approach the Bench to look at it....

> \* \* \* \* \*

> Okay why don't you show this to your Client and we'll make copies.

> \* \* \* \* \*

> We'll make you copies of that. That belong[s] in the Court's file but it makes it clear Mr. Bahm this Court passed one twenty year term sentence on Count one. There is no double argument, Double Jeopardy argument to make period.

(P–C. Tr. at 12–14.)

Bahm had the burden to submit the trial record into evidence. He did not do this; consequently, he failed to meet his burden of proof to support the grant of his petition for post-conviction relief. The post-conviction court's denial of Bahm's request for relief on this ground was not contrary to law.

## (C) *Insufficient Evidence*

 In his petition, Bahm also claimed that insufficient evidence existed to support the jury's guilty verdicts on all three of the crimes with which he was charged. The post-conviction court denied relief on this ground because the issue was waived for failure to raise it on direct appeal.[7] Because a claim of insufficient evidence is available on direct appeal, the post-conviction court did not err when it concluded Bahm had waived this allegation of error. *See Jarrett v. State*, 580 N.E.2d 245, 255 (Ind.Ct.App.1991), *trans. denied.*[8]

## (D) *Jury Instructions*

 Bahm claimed that Final Instructions six and seven were fundamentally erroneous. The post-conviction court concluded that Bahm had waived this allegation of error for post-conviction proceedings because it was available, but not raised, on direct appeal.[9] Because our supreme court has held that allegations of fundamental error may not be reviewed in post-conviction proceedings, *Sanders v. State*, 765 N.E.2d 591, 592 (Ind.2002), the post-conviction did not err when it concluded Bahm had waived this issue for post-conviction review.

## 4. *Ineffective Assistance of Post–Conviction Counsel*

 Finally, Bahm alleges that he received ineffective assistance from his post-conviction counsel.[10] Neither the

7. Because the question of whether Bahm waived this argument by failing to present it on direct appeal was a question of law, the post-conviction court could properly determine this issue without any evidence being presented. *See, e.g.,* Post–Conviction Rule 1, § 4(g) (providing court may grant summary disposition without a hearing if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law").

8. Other panels of this court have held that allegations of insufficient evidence to support a conviction are available at post-conviction because a conviction not sustained by sufficient evidence is a "fundamental error." *See, e.g., Koons v. State*, 771 N.E.2d 685, 688 (Ind. Ct.App.2002), *trans. denied; Badelle v. State*, 754 N.E.2d 510, 543 (Ind.Ct.App.2001), *trans. denied.* However, our supreme court has held that fundamental errors are not cognizable in post-conviction proceedings. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind.2002); *see also Canaan v. State*, 683 N.E.2d 227, 235 n. 6 (Ind.1997), *reh'g denied, cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998). Consequently, we follow *Jarrett.*

9. Because Bahm waived this argument by failing to present it on direct appeal, the post-conviction court could properly determine this issue without any evidence being presented.

10. The State argues Bahm's "allegation of ineffective assistance of post-conviction counsel may not be raised as an issue in the appeal of the denial of the Petition for Post Conviction Relief and is waived" because "it may not be raised for the first time on post-conviction appeal." (Appellee's Br. at 11–12.) We find the State's argument somewhat startling. We decline the State's suggestion that we hold that a post-conviction petitioner waives a claim of ineffective assistance from post-conviction counsel unless he alleges in his initial petition that the counsel, *who has not yet assisted him,* will provide ineffective assistance. Moreover, as direct appeal counsel may argue that trial counsel provided ineffective assistance, *see Williams v. State*, 771 N.E.2d 70, 72–75 (Ind.2002) (addressing ineffective assistance of trial counsel claim on direct appeal), we see no reason to distinguish between the two types of proceedings. Bahm's claim is not waived, and we address it on the merits.

Sixth Amendment to the United States Constitution nor article 1, § 13 of the Indiana Constitution guarantee the right to counsel in post-conviction proceedings. *Daniels v. State*, 741 N.E.2d 1177, 1190 (Ind.2001), *reh'g denied.* Rather, we review post-conviction counsel's performance under the "highly deferential standard" announced in *Baum v. State*, 533 N.E.2d 1200 (Ind.1989). *Id.* In *Baum*, our supreme court provided:

> A petition for post-conviction relief is not generally regarded as a criminal proceeding and does not call for a public trial within the meaning of these constitutional provisions. It thus is not required that the constitutional standards be employed when judging the performance of counsel when prosecuting a post-conviction petition at the trial level or at the appellate level.
>
> We therefore apply a lesser standard responsive more to the due course of law or due process of law principles which are at the heart of the civil post-conviction remedy. We adopt the standard that if counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by the rigorous standard set forth in *Strickland* . . . .

533 N.E.2d at 1201.

In *Waters v. State*, 574 N.E.2d 911 (Ind. 1991), our supreme court applied the standard announced in *Baum* to a petitioner's claim that he received ineffective assistance from post-conviction counsel. Waters filed a *pro se* petition for relief. After counsel entered an appearance for Waters, the court ordered evidence submitted by affidavit only. Waters submitted some affidavits *pro se.* Those affidavits were technically and procedurally inadequate; however, his counsel did not attempt to make the affidavits acceptable, nor did his

counsel submit any additional evidence. The court denied Waters' petition.

On appeal, our supreme court said:

> From our review of the affidavits, we conclude that counsel should have known that the affidavits were technically inadequate and should have taken the necessary steps to present them to the trial court in acceptable form. Counsel, in essence, abandoned his client and did not present any evidence in support of his client's claim. This lack of representation by counsel requires us to remand the case to the trial court and allow Waters to begin anew his quest for post-conviction relief. While we are mindful of and agree with our decision in *Baum* that right to counsel in post-conviction proceedings is not constitutionally guaranteed, we conclude that counsel's lack of representation following the entry of his appearance deprived Waters of a fair hearing.

*Id.* at 912.

■ While Bahm's counsel appeared at the post-conviction hearing and made legal arguments, we nevertheless believe his representation failed to meet the standard announced in *Baum*. Counsel presented no evidence at the post-conviction hearing to support Bahm's petition—he did not call any witnesses, submit any affidavits, or even submit the direct appeal record. Counsel's failure to present evidence caused the post-conviction court to inappropriately take judicial notice of its records to determine whether Bahm was subjected to double jeopardy and whether Bahm received ineffective assistance from trial and appellate counsel. Counsel should know "[i]t is practically impossible to gauge the performance of trial counsel without the trial record, as [the court] [has] no way of knowing what questions counsel asked, what objections he leveled,

**62**

or what arguments he presented." *Tapia,* 753 N.E.2d at 587 n. 10.

Counsel's failure to present any evidence deprived Bahm of a fair hearing. *See, e.g., Waters,* 574 N.E.2d at 912; *compare Daniels,* 741 N.E.2d at 1191 (holding counsel's representation met the standard announced in *Baum* because counsel "filed a fifteen-page petition that raised seven separate claims, many with multiple parts, and presented nine witnesses at a three-day hearing"). Consequently, we reverse the denial of Bahm's request for post-conviction relief and remand for further proceedings consistent with this opinion. *See Waters,* 574 N.E.2d at 912.

### CONCLUSION

The post-conviction court's denial of Bahm's motions for change of judge and for production of documents and interrogatories were not erroneous. However, ineffective assistance of post-conviction counsel led to denial of Bahm's petition without appropriate evidence before the court to address his ineffective assistance and double jeopardy claims on the merits. Therefore, we reverse the denial of Bahm's petition and remand for further proceedings. Because the post-conviction court appropriately concluded that, as a matter of law, Bahm waived his arguments regarding sufficiency of the evidence and jury instructions, those issues need not be addressed on remand.

Affirmed in part and reversed and remanded in part.

BROOK, C.J., and FRIEDLANDER, J., concur.